UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOUGLAS GEOVANI CALDERON,
                              Petitioner,

                -v-

PAUL ARTETA,
                              Respondent.

26-CV-3399 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Petitioner Douglas Geovani Calderon, a native and citizen of El Salvador, challenges his detention by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 28 U.S.C. § 2241, seeking an order directing that he be released from custody or provided a bond hearing within fourteen days.  (ECF No. 2 ("Pet.").)

For the reasons that follow, the Petition is granted in part and denied in part.

## I.     Background

### A.     Factual Background

Unless otherwise noted, the following facts are undisputed.  Calderon entered the United States on an unknown date at an unknown place by crossing the border illegally.  (*See* ECF No. 5 ("Keane Decl.") ¶ 4.).  On January 4, 2023, Calderon was arrested by the Nassau County Police Department and charged with Sexual Abuse in the Second Degree: Sexual Contact with a Person Less than 14 Years Old in violation of New York Penal Law § 130.60(2).  (ECF No. 7-1 at 6-7.) On January 23, 2023, ICE issued a Form I-200 Warrant for Arrest for Calderon based on his pending criminal charges.  (Keane Decl. ¶ 6; ECF No. 7-2.)  On April 12, 2024, Calderon pleaded guilty to a violation of New York Penal Law § 130.60(2) and was sentenced on August 7, 2024, to 6 years of probation.  (ECF No 7-1 at 6-7.)  An order of protection was issued against Calderon and remains in effect until August 6, 2029.  (Keane Decl. ¶ 7.)  On March 12, 2025,

1

ICE officers arrested Calderon pursuant to the Form I-200.  (Keane Decl. ¶ 9.)  The ICE officers transported Calderon to 535 Federal Plaza, Central Islip, New York, for post-arrest processing.  (Keane Decl. ¶ 10.)  Calderon was later transported to Orange County Jail in Goshen, New York, where he is currently detained.  (*Id.*; Pet. at 1.)

On March 31, 2025, counsel for Calderon informed ICE that on March 28, 2025, Calderon filed a motion for Late Notice of Appeal under C.P.L. § 460.30 with the Supreme Court of the State of New York in relation to his plea of guilty in his criminal charges.  (Keane Decl. ¶ 11.)  Consequently, ICE cancelled the administrative order and served Calderon with a Notice to Appear ("NTA"), which charged Calderon as inadmissible under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.  (*Id.*; ECF No. 7-6.)  Based on the evidentiary record, the Immigration Judge ("IJ") sustained the allegations in the NTA and found that Calderon was removable.  (Keane Decl. ¶ 14.)

On August 27, 2025, Calderon appeared at a bond hearing in front of an IJ with counsel.  (*Id.* ¶ 22.)  At the hearing, Calderon stated that in May 2025, he filed a motion pursuant to New York Criminal Procedure Law § 440 in state court to vacate his judgment of conviction on the grounds that he was denied effective assistance of counsel, and that the motion was still pending.  (*See* ECF No. 7-9 ("Bond Hearing Minutes") at 6, 9.)  At that bond hearing, the IJ said that although there was a pending § 440 motion, there was no decision on that and "[t]he respondent did plead guilty to sexually abusing a minor," which was "relevant when it comes to discretion."  (*Id.* at 16.)  The IJ therefore denied Calderon's request for a bond and found that Calderon was a danger to the community.  (*Id.* at 18; Keane Decl. ¶ 22.)

2

On September 29, 2025, the IJ issued a written order denying Calderon's applications for relief from removal and ordered Calderon removed from the United States to El Salvador.  (ECF No. 7-10.)  On October 29, 2025, Calderon filed an appeal of the IJ's September 29, 2025 removal decision with the Board of Immigration Appeals ("BIA"), which is currently pending with the BIA.  (Keane Decl. ¶ 27.)

On January 23, 2026, the state court granted Calderon's § 440 motion after concluding that Calderon had received ineffective assistance of counsel, vacated Calderon's judgment of conviction under New York Penal Law § 130.60(2), and restored Calderon's criminal matter "to its pre-pleading status."  (Pet. at 2.)

On March 3, 2026, Calderon filed for a new custody determination with the IJ, as his criminal conviction had been overturned.  (Pet at 1.)  The IJ has not yet granted Calderon's request for a new custody determination, and thus Calderon remains in detention.  (Keane Decl. ¶ 30.)

## B.    Procedural Background

On April 24, 2026, Calderon filed a habeas petition in this Court pursuant to 28 U.S.C. § 2241.  (Pet.)  That same day, this Court ordered the government to show cause by Thursday, April 30, 2026 why the Petition should not be granted.  (ECF No. 3.)  In the interim, the Court ordered that Calderon not be transferred in light of his interest in participating in further proceedings before this Court.  (*Id.*)

On April 30, 2026, the government filed its memorandum of law in opposition to the Petition (ECF No. 6 ("Opp.")), along with documents from Calderon's administrative file (ECF No. 7), and the declaration of Acting Supervisory Deportation Officer at ICE John Keane (Keane Decl.).  Calderon filed a reply in further support of his Petition on May 4, 2026.  (ECF No. 8.)

## II.    Legal Standard

Calderon is in custody pursuant to 8 U.S.C. § 1226(a), which authorizes the government to "arrest[] and detain[]" a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). (Keane Decl. ¶ 31.) Federal district courts may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4). "[T]he Due Process Clause [of the Constitution] covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). Habeas review thus extends to "claims by non-citizens challenging the constitutionality of their detention" under the Due Process Clause. *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018).

The Due Process Clause of the Fifth Amendment to the United States Constitution states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Where, as here, the operative statutory provision is discretionary detention under § 1226(a), courts apply a three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez*, 978 F.3d at 851-55 (applying *Mathews* three-factor test to determine that noncitizen detained under § 1226(a) was entitled to a third bond hearing); *Doe v. Decker*, No. 21-CV-5257, 2021 WL 5112624, at *3 n.2 (S.D.N.Y. Nov. 3, 2021) ("In light of *Velasco Lopez* . . . district courts apply the *Mathews v. Eldridge* . . . test when analyzing discretionary detentions pending removal pursuant to [§] 1226(a)."). Under *Mathews v. Eldridge*, courts consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

Even where, as here, a petitioner has already had one bond hearing, courts in this Circuit have applied the same multifactor analysis to determine if due process requires another bond hearing.  *See, e.g.*, *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (applying multifactor due process analysis to determine that the petitioner's "continued detention without another individualized bond hearing violates his due process rights"); *Thomas v. Barr*, No. 20-CV-6362, 2020 WL 5760823, at *3 (W.D.N.Y. Sept. 28, 2020) ("To resolve the question of what process is due to an alien who, like [Petitioner], *has* had an individualized bond hearing, this Court conducts the same inquiry as it does in cases where an alien has not received *any* bond hearing." (emphasis in original)).

### III.  Discussion

#### A.  Custody Redetermination Hearing

Application of the relevant *Mathews v. Eldridge* factors demonstrates that the length of Calderon's detention without a new bond hearing has become unreasonable and unjustified, notwithstanding his prior bond hearing.  Accordingly, he is entitled to some form of relief.

##### 1.  The Private Interest Affected by Official Action

As to the first factor, the Second Circuit has explained that the private interest at stake here "is the most significant liberty interest there is—the interest in being free from imprisonment."  *Velasco Lopez*, 978 F.3d at 851.  "Case after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'"  *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  That liberty interest remains fundamental notwithstanding Calderon's charge for a state crime.  In *Black v. Decker*, 103 F.4th 133 (2d Cir.

2024), the Second Circuit noted that even though the petitioners there were held pursuant to 8 U.S.C. § 1226(c)—which, unlike § 1226(a), under which Calderon is detained, mandates the detention of a limited class of noncitizens convicted of serious crimes—the liberty interests involved "weigh[ed] heavily in favor of" granting the petitions.  *Id.* at 151-52.

The government argues that the relevant "private interest here is not liberty in the abstract, but liberty in the United States by someone [not admitted to] this country."  (Opp. at 16 (citing *Flores Palma v. Arteta*, No. 25-CV-9340, 2026 WL 697015, at *12 (S.D.N.Y. Mar. 12, 2026) (alteration in *Flores Palma*; quotation marks omitted)).)  That argument, however, relies on a materially distinguishable decision.  In *Flores Palma*, the court concluded that the petitioner was detained under 8 U.S.C. § 1225(b)(2), a provision that does not afford petitioners a due process right to a bond hearing while in custody.  2026 WL 697015, at *9.  Because *Flores Palma* addressed detention under a different statutory framework and turned on the absence of any entitlement to a bond hearing, the Court gives that decision little weight here.  Moreover, other cases in this Circuit have not limited a petitioner's liberty interest based on their protected legal status, and this Court declines to impose such a limitation now.  *See, e.g.*, *J.I.T. v. Francis*, No. 25-CV-06749, 2025 WL 3295851, at *4 (S.D.N.Y. Nov. 26, 2025).

Additionally, the length of Calderon's present detention and his conditions of confinement further "heighten his [liberty] interest."  *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 290 (S.D.N.Y. 2025).  Like the petitioner in *Velasco Lopez*, Calderon has spent months "incarcerated in the Orange County Correctional Facility . . . alongside criminally charged defendants and those serving criminal sentences."  978 F.3d at 851 (citing *Charles v. Orange Cnty.*, 925 F.3d 73, 78 n.3 (2d Cir. 2019)); *see also Rashid v. Trump*, 807 F. Supp. 3d 349, 365 (D. Vt. 2025) (explaining that "[an] individual's liberty interest increases over time").  This deprivation has

been, "on any calculus, substantial." *Velasco Lopez*, 978 F.3d at 851.  Calderon's Petition, moreover, details his conditions of confinement, including alleged inadequate medical treatment, poor nutrition, and unsafe and unhygienic conditions.  (Pet. at 6.)  Orange County Correctional Facility has been the subject of similar prior "complaints for its treatment of ICE detainees, including allegations of medical neglect, lack of access to unspoiled food, and abuse, harassment, and retaliation by jail personnel."  *J.M.P.*, 807 F. Supp. 3d at 290.

To be sure, as the government notes, Calderon received a bond hearing approximately five months after the start of his detention, which is less than the six-month period that courts have generally recognized as the point at which prolonged immigration detention raises serious due process concerns.  (Opp. at 17 (citing *Black*, 103 F.4th at 150 (holding that "any immigration detention exceeding six months without a bond hearing raises serious due process concerns," while declining to "impos[e] a bright-line rule as a matter of constitutional law")).)  However, because Calderon previously had a bond hearing, the length of time since his last hearing is the relevant length of detention at issue, and not the length of time between his initial detention and his first bond hearing.  *See Vallejo*, 2018 WL 3738947, at *4 (analyzing the length of detention since the petitioner's last individualized bond hearing); *Jovel v. Decker*, No. 20-CV-308, 2020 WL 1539282, at *2 (S.D.N.Y. Mar. 31, 2020) ("[D]etention without a renewed bond hearing becomes unreasonable at some point, even when a petitioner has had an initial bond hearing." (quotation marks omitted)), *report and recommendation adopted*, No. 20-CV-308, 2020 WL 1539282 (S.D.N.Y. Mar. 31, 2020); *Guerrero v. Decker*, No. 19-CV-8092, 2019 WL 5683372, at *5 (S.D.N.Y. Nov. 1, 2019) (denying habeas petition for a new bond hearing where only two months had passed since petitioner's last bond hearing).  At the time he filed the Petition, Calderon had been detained for seven months and twenty-eight days since his first and only bond

hearing.  Other courts in this District have found periods of detention without a bond hearing that are comparable to Calderon's to warrant a new hearing, in combination with the other *Mathews* factors.  *See, e.g., Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (detention of seven to nine months was within the range sufficient to show a due process violation); *Young v. Aviles*, No. 15-CV-4545, 2015 WL 4579204, at *2 (S.D.N.Y. July 29, 2015) (detention of eleven to fourteen months was unreasonably prolonged); *Monestime v. Reilly*, 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010) (eight months of detention without a bond hearing was unreasonable; detention longer than six months is "constitutionally questionable").

### 2.    The Risk of Erroneous Deprivation

At the second stage of the *Mathews v. Eldridge* test, the Court must consider "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  424 U.S. at 335.  "The only interest to be considered at this part of the *Mathews* analysis is that of the detained individuals—not the government."  *Black*, 103 F.4th at 152.

Here, the risk of erroneous deprivation is high.  The IJ's reliance on Calderon's guilty plea, which has since been vacated, substantially increases the risk of erroneous detention.  (*See* Bond Hearing Minutes at 16 ("I understand there's a pending 440 and there's a hearing scheduled for next month, but there's no decision that's been reached on that. . . . The respondent did plead guilty to sexually abusing a minor[.]").)  Because the plea on which the IJ relied has since been vacated, the IJ's finding that Calderon presents a danger to the community is premised on an involuntary plea.

 Moreover, as the Second Circuit explained in *Black*, "proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern."  103 F.4th at 156 (quotation marks omitted).  Thus, requiring individuals like Calderon to "prove that they are *not*

a danger and *not* a flight risk—after the government has enjoyed a presumption that detention is necessary—presents too great a risk of an erroneous deprivation of liberty." *Id.*

Here, the government concedes that the IJ's decision to deny bail clearly derived from the burden being placed on Calderon to prove that he did not present a danger to society or a risk of flight. (Opp. at 15.) The transcript from the August bond hearing is replete with findings based on Calderon's inability to meet his burden. (Bond Hearing Minutes at 16 ("I'm going to deny bond and find [Calderon] has not demonstrated he's not a danger to the community."); *id.* at 14 ("Counsel, it's [Calderon's] burden, so I'll give you the final word[.]"); *id.* at 17 ("[A]s it now stands, [Calderon] has failed to demonstrate he's not a danger to the community.").) The IJ's decision to continue Calderon's detention was influenced by his perception that Calderon did not present evidence to overcome the evidentiary burden placed on him. "The application of this evidentiary burden increased the risk of erroneously depriving [Calderon] of his liberty because he was detained, at least in part, due to his inability to overcome the evidentiary burden placed on him, rather than an [IJ's] unequivocal determination that [Calderon] would present a danger to the community or risk of flight if released." *J.I.T.*, 2025 WL 3295851, at *4.

The government nevertheless contends that Calderon cannot show prejudice from the IJ's improper burden shifting at his bond hearing. (Opp. at 15.) In support of that argument, the government points to the IJ's statement that Calderon "did plead guilty to sexually abusing a minor" and that "this is very serious and falls within the parameters of dangerousness." (Opp. at 15 (citing Bond Hearing Minutes at 16-17).) That argument fails. Following the grant of Calderon's § 440 motion, his criminal charge was restored to its pre-plea status. (Pet. at 2.) As a result, the IJ's reliance on Calderon's prior guilty plea is plainly prejudicial in light of his changed circumstances.

### 3.    The Government Interest

The third and final factor—the government's interest—also weighs in favor of Calderon. As the Court explained in *Velasco Lopez*, when "the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, . . . it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees." 978 F.3d at 855. Such detention not only fails to serve a legitimate governmental purpose, but also undermines the government's own interest in minimizing the fiscal and administrative burdens of unnecessary incarceration while imposing substantial societal costs by removing individuals from their families, communities, and employment. *Id.*

That reasoning applies with equal force here. Calderon has been detained since March 2025 based on a criminal conviction that no longer exists. Despite the absence of a valid underlying conviction, he remains incarcerated and was required to bear the burden of proving that he was neither a flight risk nor a danger to the community in order to secure release. Incarcerating an individual—particularly after the legal basis for mandatory detention has been extinguished—does not advance any legitimate governmental interest. Instead, it prolongs unnecessary detention, imposes significant personal and familial hardship, and creates the very constitutional concerns identified in *Velasco Lopez*. Accordingly, the government's interest weighs in favor of requiring a constitutionally adequate bond hearing.

### B.    The Appropriate Remedy

### 1.    Bond Hearing

Because Calderon has not contended that his detention was unlawful from its inception, the gravamen of the constitutional wrong has occurred since his arrest, and the wrong might be redressed by something other than release. *See Velasco Lopez*, 978 F.3d at 855 (noting that the nature of habeas relief "gives the reviewing court considerable latitude 'to correct errors that

occurred during the [prior] proceedings'" (citation omitted)). In considering the appropriate remedy, the Court considers binding and persuasive precedent. Two cases from a fellow court in this District, *Garcia v. Decker*, 448 F. Supp. 3d 297, 300 (S.D.N.Y. 2020), and *O.F.C. v. Almodovar*, No. 25-CV-9816, 2026 WL 74262, at *14 (S.D.N.Y. Jan. 9, 2026), and the Second Circuit's decision in *Velasco Lopez* pave the way, as all point to the same remedy in cases where the government has failed to provide a timely and constitutionally adequate bond hearing: ordering that such a bond hearing promptly occur. In *Velasco Lopez*, where the petitioner languished in detention for approximately fifteen months, the court stated that "the district court appropriately addressed the violation by ordering a new hearing at which the Government was called upon to justify continued detention." 978 F.3d at 855. So too in *Garcia* and *O.F.C.* And the Government does not meaningfully contest applying that relief here. (Opp. at 18.)

## 2.    Burden of Proof

Here, Calderon did have a bond hearing, albeit months ago. Accordingly, consistent with prior decisions from courts in this District, Calderon bears an initial burden to establish by a preponderance of the evidence that his circumstances have changed since his first hearing in August 2025. *See Jovel*, 2020 WL 1502038, at *9; *Vallejo*, 2018 WL 3738947, at *6. The Court concludes, as a matter of law, that Calderon has satisfied that burden. Since his last bond hearing, the primary basis for the IJ's adverse decision—that he pleaded guilty to the charge of New York Penal Law § 130.60(2)—is no longer applicable, as the conviction has been vacated. (*See generally* Pet.)

Because Calderon has made this threshold showing of changed circumstances, the government will bear the burden to justify his continued detention by clear and convincing evidence at his bond hearing *See Perez v. Decker*, No. 18-CV-5279, 2018 WL 3991497, at *6 (S.D.N.Y. Aug. 20, 2018) (noting that courts in this District have "concluded that imposing a

11

clear and convincing standard on the government would be most consistent with due process" (cleaned up)).

Finally, the IJ should consider alternatives to imprisonment and Calderon's ability to pay a monetary bond. Indeed, courts in this District have held that due process requires these considerations. *See, e.g.*, *Perez*, 2018 WL 3991497, at *6 ("[T]he Due Process Clause requires an IJ to consider alternatives to detention and a petitioner's ability to pay a bond."); *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018) (concluding that "the Constitution compels" consideration of ability to pay and alternatives to detention); *O.F.C.*, 2022 WL 4448728, at *10 ("Courts in this District overwhelmingly agree that IJs must consider . . . alternatives to imprisonment and ability to pay. . . when determining bond for a detained immigrant.").

In sum, the following conditions shall apply at Calderon's renewed bond hearing: (i) having found that changed circumstances justify a renewed bond hearing, the government will bear the burden to establish by clear and convincing evidence that Calderon poses a flight risk or a future danger to the public; (ii) the IJ must meaningfully consider alternatives to imprisonment such as release on recognizance, parole, or electronic monitoring, and (iii) the IJ must meaningfully consider Calderon's ability to pay if setting a monetary bond.

## IV.  Conclusion

For the foregoing reasons, Calderon's petition for a writ of habeas corpus is hereby GRANTED in part. The government is ORDERED to take Calderon before an IJ for an individualized bond hearing within fourteen calendar days of the date of this Order. At that hearing, the government shall bear the burden of demonstrating, by clear and convincing evidence, that Calderon is a danger to the community or a risk of flight. At the hearing, the final adjudicator shall meaningfully consider Calderon's ability to pay and any reasonable alternative

to detention prior to making a final ruling on continued detention, conditions of release, or the amount of any bond.

In the event that the government fails to provide Calderon with such a bond hearing within fourteen calendar days, the government is ORDERED to release Calderon immediately.

SO ORDERED.

Dated: May 18, 2026
New York, New York

_____
J. PAUL OETKEN
United States District Judge

13